UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CASIUS ERNEST

                          Plaintiff

                                                              **COMPLAINT**

              -against-

                                                              Civ Action #_____

THE CITY OF NEW YORK,
POLICE  OFFICER PATRICK LENTINI, TAX REG # 964115,
POLICE OFFICER  HALL, TAX REG# 955696
AND  OTHER UNIDENTIFIED  NEW YORK
CITY POLICE OFFICERS, AND OTHER
UNIDENTIFIED JOHN AND JANE DOES                          Jury Trial Demand
                          Defendants
-------------------------------------------------------------------X

Plaintiff, CASIUS ERNEST by his attorney Edward Zaloba, Esq., complaining of

the defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive

damages and attorney's fees pursuant to 42 USC §1983 and 42 USC §1988 for

violations of his civil rights, as said rights are secured by said statutes and the

Constitution of the State of New York and the United States.   Plaintiff also

asserts supplemental state law tort claims.

### JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. §1983, §1988 and the

First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States

Constitution.

3.      Jurisdiction is founded upon 28 U.S.C. §1331, §1343 and 1367.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under U.S.C.§1391(b) in that this is the District in which the claim arose.

5.      Plaintiff respectfully demands a trial by Jury of all issues in this matter pursuant to Fed R. Civ. P. 38(b).

## PARTIES

6.      Plaintiff, CASIUS ERNEST, a citizen of the United States, and at all relevant times, is a resident of the City and State of New York.

7.      Defendant, The City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant, The City of New York maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

9.      That at all times hereinafter mentioned, the individually named defendants, Police Officers Lentini and Hall, and other unidentified New York City Police Officers were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties and under the color of state law.

10.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of

the State or City of New York.

11.    Each and all of the acts of the defendant and other unidentified New York City police officers alleged herein were done by said defendant while acting within the scope of and in furtherance of their employment by defendant The City of New York.

12.    All defendant officers are being sued in both their individual and official capacities.

## NOTICE OF CLAIM

13.    That on November 6, 2019, a Notice of Claim, was served upon the Comptroller of the CITY OF NEW YORK.

14.    The  50H hearing was conducted on February 5, 2010.

15.    That more than thirty days have elapsed since the Notice of Claim has been served upon the defendants and the said defendants have neglected or refused to make any adjustment or payment thereof.

16.    That this action is commenced within one year and ninety days after the causes of action arose and other causes of action within three (3) years when said action arose.

## STATEMENT OF FACTS

17.    On or about August 19, 2019, at approximately 1:10 a.m. in front of the vicinity of 89-13 138th Street, the plaintiff was shot in the back with a taser by defendant Officer Lentini.

18.    The Plaintiff had not committed a crime.

19.    The defendant officers had not witnessed plaintiff commit either a crime or offense.

20.     The defendant officers did not request that plaintiff  stop running.

21.     That plaintiff was not running from police

22.      Upon being shot by the tasers, the plaintiff was unable to ambulate and immediately stopped.

22.      As soon as the plaintiff stopped, defendant Officer Hall tackled the plaintiff, forcing his head violently into the ground.

23.      That defendant Officer Hall use of force was neither reasonable nor justified under the circumstances.

24.     That the defendant Lentini's use of the Taser was neither reasonable nor justified under the circumstance

25   That the plaintiff did not resist arrest and the defendants never charged him with the crime of resisting arrest .

26.     That the plaintiff was not an immediate threat to the safety of the officers or anyone else.

27.     That the plaintiff was not a danger to others.

28      That plaintiff's actions could not be viewed as active aggression.

29.     That plaintiff was seized and arrested without probable cause.

30.      That defendants' assault and battery and their use of force were excessive and without legal justification, without authority of law and without reasonable necessity to use such force.

31.      That both defendant officers' use of force was excessive and without legal justification, without the authority of law, and without reasonable necessity to use such force.

32.     That each defendant herein failed to intervene and prevent violations of plaintiff's civil rights from occurring.

33.     That the defendants placed a knee on the back of plaintiff's neck and cuffed him. The plaintiff was arrested without probable cause.

34.     That plaintiff was taken to Jamaica Hospital by ambulance.

35.     That the plaintiff suffered fractures of the mandible, finger, abrasions to face and arms, that two taser darts were removed from plaintiff's lower back.

36.     That plaintiff underwent surgery of mandible, screws, wires and plates were required.

37.     That the plaintiff remained cuffed the entire time in the hospital, even during surgery.

38.     That plaintiff suffered great pain and discomfort and required additional medical care after such surgery.

39.     The hospital discharged plaintiff on August 20, 2019 and was taken to Central Booking.

40.     Thereafter, plaintiff was caused to be brought before the Criminal Court of Queens County to be arraigned at which time bail was set.

41.     As a result of the defendants' conduct the plaintiff suffered the loss of liberty, imprisonment, plaintiff sustained emotional distress, embarrassment, humiliation, physical injury the full extent and deprivation of his constitutional rights.

42.     Defendant officers, in effort to conceal their  unlawful arrest of plaintiff and their assault and battery and the use of excessive force on plaintiff, conspired and caused false charges to be lodged against plaintiff.

43.     The plaintiff was falsely arrested and charged with the crimes of assault, criminal mischief, possession of stolen property, and harassment.

44.     The defendant officers continued their conspiracy by preparing false documents and reports to be presented to both the Court as well as the Queens District Attorney's Office.

45.     The plaintiff was maliciously prosecuted for approximately 3 months.

46.     All charges were dismissed and sealed on November 25, 2019.

47.     That plaintiff was caused to be unlawfully imprisoned for approximately 5 days.

48.     The plaintiff was wholly innocent of all charges.

49.     That plaintiff required additional medical treatment for his surgically repaired mandible and the resulting sequel of injuries associated thereto.  Plaintiff also suffers from shoulder pain and discomfort as a result of said battery. The full extent of plaintiff's injuries are unknown.

50.     As a result of the defendants' use of excessive force, unlawful imprisonment, and violations of plaintiffs' civil rights, the plaintiff was caused to suffer irreparable harm, loss of liberty, physical injury, loss of work, humiliation injury and other injuries.

**AS AND FOR A FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**CONSTITUTIONAL VIOLATION  PURSUANT TO §1983**

51.     Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

52.     The conduct and actions of Defendants Officers and other unidentified

police officers, under color of state law and acting without probable cause, justification, or otherwise privileged, subjected plaintiff to false charges, unlawful imprisonment against plaintiff's will and plaintiff was conscious of said confinement, and said conduct and actions were done intentionally, maliciously with a deliberate indifference or with a reckless disregard for the natural and probable consequences of their acts, and subjected plaintiff to conspiracy, acts, and omissions to act without due process of law and in violation of 42 U.S.C. §1983 thereby depriving plaintiff of his rights, privileges and immunities secured by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, including, without limitations, deprivation of the following constitutional rights, privileges and immunities:

(a)     Plaintiff was deprived of his First Amendment right to speak freely and to petition the government for redress of grievances;

(b)     Plaintiff was deprived of his Fourth Amendment constitutional right to be free from unreasonable seizures of his person;

(c)     Plaintiff was deprived of his Fourth Amendment right to be free from the use of excessive or unreasonable force;

(d)     Plaintiff was deprived of his Fourteenth Amendment right to liberty, without due process of law;

(e)     Plaintiff was deprived of his Fourteenth Amendment right to equal protection of law;

53.     As a result of the defendants' conduct, plaintiff, was deprived of liberty, sustained emotional injury including mental suffering, humiliation, embarrassment, and plaintiff was physically injured and plaintiff was otherwise harmed, damaged and injured.

**AS AND FOR A  SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO**
**42 U.S.C. §1983 AND THE USE**
**OF EXCESSIVE AND UNREASONABLE FORCE**

54.     Plaintiff repeats, reiterates and incorporate by reference each and every

allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

55.     That the plaintiff's rights have been violated under the Fourth and Eighth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. §1983, in that plaintiff was unlawfully subjected to excessive and unreasonable force by defendants, who intentionally, recklessly assaulted and battered plaintiff.

56.     That the said assault and battery of the plaintiff's was effected by defendants and other unidentified defendant officers without authority of law and without any reasonable necessity to use any force much less the excessive force that they employed and the force employed was used without legal justification, without plaintiff's consent, with malice and with an intent to inflict pain and suffering.

57.     As a direct result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth Amendment of the United States Constitution being more particularly plaintiff's rights to be free from the use of excessive and unreasonable force.

58.     That all the defendants who witnessed the use of excessive force against the plaintiff and who had a reasonable opportunity to intervene and prevent him being injured and who failed to do so are liable to the plaintiff via their failure to exercise their affirmative duty to intervene.

59.     That by reason of the unlawful use of excessive and unreasonable force, the plaintiff was harmed physically, requiring them to received medical attention – surgical intervention and he was subjected to physical pain, humiliation,

embarrassment, anxiety, closed confinement, loss of liberty, unnecessary and unwarranted medical care and expenses for medical care and that plaintiff was otherwise harmed.

**AS FOR A THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**MALICIOUS ABUSE OF PROCESS UNDER 42 USC 1983**

60.     Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

61.     The Defendant officers, issued legal process to place plaintiff under arrest and charged the plaintiff to cover up their wrongful battery of plaintiff as well as to conceal their unlawful conduct towards plaintiff.

62.     The Defendant officers' arrested plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

63.     The Defendant officers acted with intent to do harm to plaintiff without excuse or justification.

64.     The Defendant officers tasered and slammed plaintiff into the ground with no justification, said conduct  could cause the defendants not only severe disciplinary consequences but  also the loss of employment .

65.     As a result of defendants' conduct, plaintiff has suffered physical and mental anguish, together with shock, fright, apprehension, embarrassment, humiliation, economic loss and was otherwise harmed damaged and injured.

## AS AND FOR A FOURTH CAUSE OF ACTION
## VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO
## 42 USC §1983 AND THE FOURTH AMENDMENT VIA
## MALICIOUS PROSECTUION

66.     Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

67.     That the plaintiff's rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment by the defendant.

68.     That said malicious prosecution was initiated by the defendants and  their agents, servants and employees, without any legal justification and without probable cause in that the defendants caused the commencement and continuation of criminal proceedings against the plaintiff,  and in that the action was commenced and continued intentionally and with malice and deliberate indifference to plaintiffs' rights.   The malicious prosecution ceased when the matter was dismissed and sealed on November 25, 2019.

69.     That defendant officers and other unidentified officers swore falsely as to the alleged criminal actions attributed to plaintiffs and caused their malicious prosecution to be commenced and continued.

70.     That the defendants mentioned herein and other unidentified officers misrepresented and falsified evidence before the District Attorney.

71.     That the defendants did not make a complete and accurate statement of facts to the prosecutor.

72.     That defendants withheld exculpatory evidence from the District Attorney.

73.     That the defendants lacked probable cause to initiate criminal proceedings against the plaintiff.

74.     That the defendants acted with malice to initiate criminal proceedings against the plaintiff.

75.     That the defendants were directly and actively involved in the construction of the criminal proceeding against the plaintiff.

76.     Notwithstanding the prejudice and fraudulent conduct of the defendants, the criminal proceeding were terminated in plaintiff's favor and all charges against them were dismissed.

77.     That the plaintiff was wholly innocent of all charges.

78.     That all the defendants who knew of the commencement and continuation of the malicious prosecution of the plaintiff is liable to the plaintiff via his failure to exercise his affirmative duty to intervene.

79.     That as a result of the above conduct, the defendants' malicious prosecution caused plaintiff's his loss of liberty and other emotional injuries and that the plaintiff was otherwise harmed and injured.

## AS AND FOR A FIFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF: FAILURE TO INTERVENE UNDER 42 U.S.C. 1983

80.     Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

81.     Each and every individual defendant officer who observed the unlawful conduct and had an opportunity to intervene violated Plaintiff's rights under 42 U.S.C. 1983 and the Fourth and Fourteenth Amendments by failing to uphold their duty to intervene and prevent such conduct .

82.     The individual defendant officers failed to intervene on plaintiff's behalf to prevent the violation of his constitutional rights despite having a realistic opportunity to do so.

83.     As a result of the aforementioned conduct of the individual defendants, plaintiff's constitutional rights were violated and he was subjected to use of excessive force ,battery and other violations of his  constitutional rights.

**AS AND FOR A SIXTH CAUSE OF ACTION
ON BEHALF OF PLANITIFF
LIABILITY OF DEFENDANT CITY
FOR CONSTITUTIONAL VIOLATIONS MONELL (STATE & FEDERAL)**

84.     Plaintiff repeat, reiterate and incorporate by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

85.     The defendants herein were acting under a color of state law, as officer of the New York City Police Department when they committed the acts complained of herein.

86.     The improper use of tasers by the New York City Police Department has resulted in at least 24 federal civil rights cases – between the years of 2015 to 2018. Moreso, CCRBs, Data Transparency Initiative reveals that an average of 90 allegations concerning taser misuse have been reported per year over these prior years.   The above facts and materials can be found in the complaint pending in the matter of Tomas Medina v. The City of New York et al 19 CV 9412 SDNY.  The New York Civil Liberties Union issued a report from data acquired from both State as well as NYPD indicating that sixty percent of the taser incidents did not involve active aggression.  See Medina. Attached hereto and made a part hereof is Exhibit D from the Medina complaint setting forth 24 improper abusive taser cases.

87.     As these reports are a number of years old, however, at present there can be no doubt that incidents of taser abuse have increased.

88.     In addition, the Medina complaint noted that CCRBs reported that taser

may be vulnerable to both over use and misuse by law enforcement (Medina- footnote #17 CCRB taser and evaluation of taser related complaints 2016).

89.  The defendant City and its officers, the defendants herein, engage in a policy practice, custom, usage or practice of subjecting citizens to excessive force by tasing as in the case herein.

90.   The defendant City's officers are utilizing tasers without the existence of probable and contrary to both the manufacturer's instruction as well as the NYC Patrolman's Guidelines.

91.   The NYPD's practice and custom of officers unlawfully utilizing tasers is so persistent, widespread, and pervasive as to constitute a custom or usage and imply the constructive knowledge or acquiescence of the City and its policymakers.  The Medina Case and its references to the finding of defendant NYC's CCRB civilian lawsuits and complaints, news articles unequivocally demonstrate that the City has been on notice and should have been aware of the constitutional violations committed by the NYPD. Both the inherent danger as well as the constitutional violations, predicated upon the Fourth and Fourteenth Amendment are so numerous, persistent, and pervasive that the need for corrective action is obvious.  The City' failure to take any such action, through training, enhanced supervision, diligent investigation, or meaningful punishment-in particular, disciplinary action that would deter future misconduct – constitutes deliberate indifference to the violations.  This deliberate indifference to the NYPD's widespread violation of constitutional rights can be considered a policy, practice or custom of the City. (See Medina Complaint).

92.   The aforementioned customs policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department included but not limited to seizing and arresting persons by utilizing excessive force without probable cause, providing false information to prosecutors, falsifying police reports and testifying falsely under oath.

93.     The defendant City of New York, failed to effectively screen, hire, train, supervise and discipline its police officers and employees, including the defendant police officers and employees herein, for their ability to conduct proper and truthful police work, for their ability to investigate properly and for their ability to determine probable cause.

94.     The existence of such de facto policies and/or well-settled and widespread customs and practices has been known to supervisory and police-making officers and officials of the Police Department and the City of New York for a substantial period of time.

95.     Despite knowledge of such illegal de facto policies and practices, the supervisory and police-making officers and officials of the Police Department and the City of New York have not taken adequate steps to terminate these policies and practices, have not disciplined individuals who engage in such practices, or otherwise properly trained police officers with regard to the constitutional and statutory limits on the exercise of their authority, and have instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or negligent disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

96.     Defendant NYC as well as unidentified police officers who were supervisors and final decision makers as a matter of policy and practice, have with deliberate indifference failed to properly train, discipline, sanction and retrain police officers, despite their knowledge of the recurring problem of violations of the Constitutional rights of citizens by seizing persons without probable cause, assaulting and battery a person by the use of excessive and unlawful force, falsely arresting him and falsifying official records etc, and in so failing, the defendant NYC has caused, encouraged, condoned and allowed the defendants in this case to engage in the aforementioned unlawful conduct without fear of consequences for their illegal acts

which did cause the plaintiff to be subjected to deprivations of his civil rights.

97.     That the defendant municipality, NYC, alerted to the existence of a significant number of false arrests by its police officers, by repeated complaints, of false arrest, and the use of excessive and unlawful force, exhibited deliberate indifference thereto in that it was obvious to NYC that there was a need for more and/or improved supervision of police officers in order to protect against constitutional violations and in spite or repeated complaints of civil rights violations, there have been no meaningful attempts on the part of NYC to investigate or forestall further incidents.

98.     That the defendant municipality, NYC, has also been alerted to the use of malicious prosecution brought by its employee officers to cover up the false arrests, the use of excessive and unlawful force and unlawful seizures by its police officers, and that the culture of bringing such false charges and malicious prosecuting victims of NYPD false arrests has been allowed to exist without repercussions to the officers who engage in such behavior.  Failure and or deliberate indifference to investigate and or discipline said conduct has become the custom of the Defendant City and its police force to tolerate the improper beating, illegal arrests and other wrongful actions by its police officers.  This behavior was permitted to continue in the case at bar.

99.     Moreover, the action of the individual defendants resulted from and were taken pursuant to a de facto policy and/or well-settled and widespread custom and practice of the City of New York, which is implemented by police officers of said City. Where the use of unlawful and excessive force is concealed by false arrest and malicious prosecution upon innocent citizens.  Where the upward mobility of the officers within ranks is accomplished.  This conduct is open and notorious and frequently used by officers to conceal improper conduct by said officers.  This is a well established practice and custom of the defendant NYC police department which has been the subject of a voluminous number of civil rights actions.

100.   Each and every year, thousands of civil rights actions alleging false arrest

and unlawful imprisonment and the use of excessive and unlawful force by police officers are brought and "settled" by the defendant New York City.   Each year, the defendant, New York City spends millions of dollars to resolve said actions.  Each year hundreds if not thousands of matters containing allegations of false arrest, unlawful and excessive force and unlawful imprisonment by the defendant New York City and its police officers are settled and/or brought to trial.  A multitude of these matters could be cited if necessary.   Of greatest concern, is the fact that the defendant NYC is in possession of all information concerning thousands of similar matters settled. Furthermore, these facts alone substantiate the fact that not only is the defendant New York City aware of said police practices and usages, but moreso, that defendant NYC has failed to stop said practices and has condoned said practices and usages.

101.   Defendant City of New York is directly liable and responsible for the acts of defendants because it has repeatedly and knowingly failed to properly supervise, train and discipline said officers and because it repeatedly and knowingly failed to enforce the rules and regulations of the New York City Police Department and the laws of the State of New York and the United States.

102.   The knowing and repeated failure of the defendant City of New York to properly supervise, train and discipline said officers actually caused the injuries to plaintiffs alleged herein.

103.   Upon information and belief, defendant City of New York knew or should have known that the acts alleged herein would deprive plaintiffs of their rights without due process of law, in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution and Article 1, §§1, 6, 8, 9, 11 and 12 of the Constitution of the State of New York, including, without limitation, such rights as plaintiffs' rights to freedom from loss of liberty, freedom of speech, rights to petition for redress of grievances, right to be free from unreasonable seizures and the use of excessive force, right to due process, and right to equal protection of the laws.

104.    The defendant City of New York is also directly liable and responsible for the acts of defendants under the doctrine of respondeat superior.

105.    As a result of the foregoing conscious policies, practices, customs and/or usages, defendant CITY OF NEW YORK has permitted and allowed the employment and retention of individuals as police officers and employees whose individual circumstances place the public or segments thereof at substantial risk of being the victims of unlawful and/or unreasonable behavior.    Such polices, practices customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to the plaintiffs herein.

106.    Defendant City's improper and inadequate policies, customs, usages, practices rules and/or regulations were the direct and proximate cause of violations of plaintiff's civil rights.

107. As a result of the violation of his civil rights, plaintiff suffered significant physical and emotional pain, humiliation and trauma.

108.    Plaintiff seeks compensatory damages and punitive damages.

## STATE CLAIMS

### AS AND FOR A  SEVENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF,
### FALSE ARREST

109.    Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

110.    By the actions described above, the defendants, falsely seized and arrested plaintiff, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so.   The defendants intended to confine plaintiff, plaintiff was aware of his confinement and did not consent to said confinement.   The acts and conduct of the defendants were the direct and proximate cause of injury and

damage to plaintiff and violated plaintiff's statutory and common law rights as guaranteed plaintiff by the laws and Constitution of the State of New York.

111.   As a result of the foregoing, plaintiff was deprived of liberty, sustained great emotional injury including mental suffering, humiliation, embarrassment, and was otherwise harmed, damaged and injured.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF,
### FALSE IMPRISONMENT

112.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

113.   As a result of the foregoing, plaintiff was falsely imprisoned by the defendants, his liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints.

114.   Plaintiff was conscious of said confinement and did not consent to same.

115.   The confinement of plaintiff was without probable cause and was not otherwise privileged.

116.   As a result of the foregoing, plaintiff was deprived of liberty, sustained great emotional injury including mental suffering, humiliation, embarrassment, and was otherwise harmed, damaged and injured.

## AS AND FOR A  NINTH CAUSE OF ACTION
### ASSAULT

117.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

118.   Defendants' aforementioned actions placed plaintiff in apprehension of imminent harmful and offensive bodily contact.

119.   As a result of the foregoing, plaintiff sustained great emotional injuries, was subject to great humiliation, physically harmed and was otherwise harmed, damaged and injured.

## AS AND FOR A TENTH  CAUSE OF ACTION
### BATTERY

120.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

121.   By the actions described above, defendants' officers while in the scope of their employment, maliciously, willfully and intentionally committed battery upon the plaintiff with apparent ability and objective to cause imminent harm and offensive bodily harm and subjected plaintiff to physical injury and harm, embarrassment and humiliation. The defendants' intentional willfully and maliciously battered plaintiff, when they in a hostile manner struck plaintiff without his consent and with the intentions of causing harmful and/or offensive bodily contact to the plaintiff and caused such battery . The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated plaintiff's statutory and common law rights as guaranteed plaintiff by the laws and Constitution of the State of New York .

122.   Defendant police officers did so without privilege or consent from plaintiff.

123.   As a result of the foregoing, plaintiff sustained great emotional injuries, was subject to great humiliation, physically harmed and was otherwise harmed, damaged and injured

**AS AND FOR A ELEVENTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF,**
**CLAIM FOR RELIEF UNDER NY STATE LAW**
**NEGLIGENT HIRING AND RETENTION**

124.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

125.   Upon information and belief, defendants failed to use reasonable care in the hiring and retention of the aforesaid defendants who conducted and participated in the use of excessive force and other violations of plaintiff's civil rights.

126.   Defendants knew, or should have known in the exercise of reasonable care, the propensities of the defendants officers and other unidentified officers, to engage in the wrongful conduct heretofore alleged in this Complaint.

**AS AND FOR A  TWELEFTH FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF, CLAIM OR RELIEF UNDER NY STATE LAW**
**NEGLIGENT TRAINING AND SUPERVISION**

127.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

128.   Upon information and belief, defendants failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the unwarranted seizure and use of excessive force and other violations of plaintiff's civil rights.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## NYS CONSTITUTIONAL VIOLATIONS

129.   Plaintiff repeats, reiterates and incorporate by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

130.   Defendants subjected plaintiff to the foregoing conspiracies, acts, and omissions to act without due process of law, thereby depriving plaintiff of rights, privileges and immunities secured by Article 1, §§1, 6, 8, 9, 11 and 12 of the New York State Constitution, including, without limitation, the following deprivations of his rights, privileges and immunities:

(a)   Plaintiff was deprived of his rights to speak freely and to petition the government for redress of grievances, in violation of §§ 8 and 9 of the Constitution of the State of New York;

(b)   Plaintiff was deprived of his rights to be free unreasonable seizures of his person; in violation of § 12 of the Constitution of the State of New York;

(c)   Plaintiff was deprived of their rights to be free from the use of excessive or unreasonable force in the course of either a lawful or an unlawful seizure, in violation of § 12 of the Constitution of the State of New York;

(d)   Plaintiff was deprived of their rights to liberty, without due process of law, in violation of §6 of the Constitution of the State of New York;

131.   As a result of the defendants' conduct, plaintiff was deprived of liberty, sustained great emotional injury including mental suffering, humiliation, embarrassment, and Jones was physically injured and was otherwise harmed, damaged and injured.

## AS AND FOR A FOURTEEN CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF,
## FAILURE TO INTERVENE

132.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more

fully and at length set forth set forth herein.

133.   Each and every individual defendant officer had an affirmative duty to intervene on plaintiff's behalf to prevent the violation of his constitutional rights.

134.   The individual defendant officers failed to intervene on plaintiff, behalf to prevent the violation of their constitutional rights despite having a realistic opportunity to do so.

135.   As a result of the aforementioned conduct of the individual defendants, plaintiff's constitutional rights were violated and they were subjected to use of excessive force and other violations of their constitutional rights.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF,
(Intentional Infliction of Emotional Distress under the laws of New York)

136.   Plaintiff repeats, reiterate and incorporate by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

137    The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

138.   The aforementioned conduct was committed by defendants while acting within the scope of their employment by defendant City.

139.   The aforementioned conduct was committed by defendants while acting in furtherance of their employment by defendant City.

140.   The aforementioned conduct was intentional and for the sole purpose of causing severe emotional distress to plaintiff.

141.   As a result of the aforementioned conduct, plaintiff suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
(State law claim – Respondeat Superior)

142.   Plaintiff repeats, reiterates and incorporates the foregoing paragraphs as if fully set forth herein.

143.   The conduct of defendants and other unidentified police officers alleged herein, occurred while they were on duty, in uniform, and in and during the course and scope of their duties and functions as New York City Police officers, and while they were acting as agents, officers, servants and employees of the defendant CITY OF NEW YORK.  The acts and conduct of the defendants and other unidentified officers were the direct and proximate cause of injury and damage to plaintiff and thus violated plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York pursuant to the doctrine of respondeat superior.

144.   As a result of the foregoing, plaintiff was deprived of his constitutional rights, subjected to the use of excessive force and sustained great emotional and physical injuries, were subject to great humiliation, and were otherwise harmed, damaged and injured.

145.   Plaintiff repeats, reiterates and incorporates the foregoing paragraphs as if fully set forth herein.

## AS AND FOR A SEVENTEETH CAUSE OF ACTION
## VICARIOUS  LIABILITY

146.   Plaintiff repeats, reiterates and incorporates by reference each and every

allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

147.   Each and everyone of the defendants, and other unidentified defendants, a group of police officers herein, have agreed to knowingly falsified records and testify falsely in order to cover up truth of the unconstitutional conduct and unlawful acts committed by defendants herein .

148.   All defendant officers engaging in their group falsification of facts are vicariously liable for the underlying wrongful conduct.

149.   As a result of said group falsification, cover up, the plaintiff has sustained emotional, physical injuries, mental suffering, humiliation, economic harm, embarrassment and otherwise harmed, and damaged and injured.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
## PUNITIVE DAMAGES ON BEHALF OF PLAINTIFF

150.   Plaintiff repeats, reiterates and incorporates by reference each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth set forth herein.

151.   The acts of the individual defendants were willful, wonton, malicious and oppressive.  They acted with callous disregard, recklessness and deliberate indifference toward the rights of the Plaintiff and without concern for the damage they would cause. Defendants' acts were motivated by a desire to harm plaintiff without regard for plaintiff's well-being and were based on a lack of concern and ill will toward plaintiff.

**WHEREFORE**, the plaintiff demands the following relief jointly and severally against all of the defendants:

A.      Compensatory and Punitive damages as awarded by a jury;

B.      Costs, fees and expenses;

C.      The convening and empanelling of a jury to consider the merits of the claims herein;

D.      Costs and interest and attorney's fees;

E.      Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.


Dated:        Queens, New York                    Yours, etc.,
              August 4, 2020

                                                  EDWARD ZALOBA, Esq.
                                                  118-21 Queens Boulevard, Ste. 504
                                                  Forest Hills, New York 11375
                                                  (718) 261-3000

# Exhibit D

1.      According to a lawsuit filed in the Eastern District of New York, on November

15, 2012, described in paragraph 2 in Exhibit C, Mr. Kevin White was choked and tased three

times while at the police station. Mr. White settled his lawsuit for $6,500. White v. The City of

New York et al., Dkt. No. 15-CV-00270, paragraphs 39 - 42, available at

https://www.documentcloud.org/documents/4920403-White-v-The-City-of-New-York-et-al.

2.      According to a lawsuit filed in the Eastern District of New York, on December

25, 2012, Mr. Derrell Davantes was at his home in the East Williamsburg neighborhood of

Brooklyn when officers came to the door looking for Mr. Davantes' friend. Mr. Davantes told

the officers they could not enter the home without a warrant, to which one of the officers

responded "Fuck that," then tased Mr. Davantes and slammed him to the ground and handcuffed

him. Mr. Davantes settled his lawsuit for $10,000. Davantes v. Alamrani et al., Dkt. No. 15-CV-

07170, paragraph 16, available at https://www.documentcloud.org/documents/4921406-

Davantes-v-Alamrani-et-al.

3.      According to a lawsuit filed in the Eastern District of New York, on July 19,

2013, Ms. Melissa Abram went to the 81st Precinct near her home in the Bedford Stuyvesant

neighborhood of Brooklyn to make a complaint concerning her landlord. After she used a side

door to the precinct, a group of officers yelled at her, ordered her to exit through the front door,

and then shot her with a Taser. The Taser darts entered Ms. Abram's body on her left breast and

her neck, locations the manufacturer of Tasers warns Taser operators to avoid. Ms. Abram

settled her lawsuit for $25,000. Abram v. City Of New York et al., Dkt. No. 16-CV-05682,

paragraphs 19-24, available at https://www.documentcloud.org/documents/4923098-Abram-v-

City-Of-New-York-et-al.

4.      According to a lawsuit filed in the Eastern District of New York, on April 2, 2014, Mr. John Scott was with his fiancé, Rosanna Fernandez, at her apartment in the Astoria neighborhood of Queens, when several officers came to the door, demanded entry, and violently burst into the apartment. The officers beat, tased, and pepper-sprayed Mr. Scott to such an extent that the officers apparently believed he was dead. The lawsuit was pending as of July, 30, 2019. Scott et al. v. The City Of New York et al., Dkt. No. 16-CV-00834, paragraph 49, available at https://www.documentcloud.org/documents/4922064-Scott-et-al-v-The-City-Of-New-York-et-al.

5.      According to a lawsuit filed in the Eastern District of New York, on July 22, 2014, described in paragraph 23 in Exhibit C, David Jones and Proctor Martin choked and tased by NYPD Officers. Mr. Jones and Mr. Proctor settled their lawsuit for $145,000. Jones v. City of New York, 15-CV-5230, paragraphs 28-32, available at https://www.documentcloud.org/documents/4921037-Jones-et-al-v-City-of-New-York-et-al.

6.      According to a lawsuit filed in the Southern District of New York, on July 27, 2014, described in paragraph 24 in Exhibit C, Mr. Dytrel was tased multiple times by NYPD officers. The plaintiffs settled this lawsuit for $85,500. Jackson et al. v. Skehill et al., Dkt. No. 15-CV-04987, paragraphs 131-33, available at https://www.documentcloud.org/documents/4920998-Jackson-et-al-v-Skehill-et-al.

7.      According to a lawsuit filed in the Eastern District of New York, on August 14, 2014, Mr. Thomas Black, an African American man, was riding his bicycle in the Brownsville neighborhood of Brooklyn when an unmarked car started following him. Mr. Black was tased after pulling into a NYCHA property and getting off his bike with his hands up. Mr. Black settled his lawsuit for $25,000. Black v. The City of New York et al., Dkt. No. 15-CV-05419,

paragraphs 24-25, available at https://www.documentcloud.org/documents/4921064-Black-v-The-City-of-New-York-et-al.

8.      According to a lawsuit filed in the Eastern District of New York, on August 29, 2014, Mr. Anthony Greene was at home with his family in Brooklyn when officers forcibly entered their home, violently removed members of the family from the home, and repeatedly stunned him in the back with a Taser. Mr. Greene suffered a heart attack and extreme hypertension as a result of being tased. The lawsuit was pending as of July, 30, 2019. Greene et al. v. The City of New York et al., Dkt. No. 15CV06436, paragraphs 32, 40, available at https://www.documentcloud.org/documents/4923159-Greene-et-al-v-The-City-of-New-York-et-al.

9.      According to a lawsuit filed in the Southern District of New York, on November 15, 2014, Mr. Robert Ellis, an African-American man, was leaving a nightclub in the West Village neighborhood of Manhattan with his girlfriend. Officers began to arrest Mr. Ellis' girlfriend, and upon Mr. Ellis pleading with the officers not to arrest her, the officers struck Mr. Ellis with their batons and then tased him. At no point did Mr. Ellis in any way resist, obstruct, hit, or attempt to hit or grab the officers. Mr. Ellis settled his lawsuit for $15,000. Ellis v. City Of New York, et al., Dkt. No. 15-CV-06822, paragraph 25, available at https://www.documentcloud.org/documents/4921337-Ellis-v-City-Of-New-York-et-al.

10.     According to a lawsuit filed in the Southern District of New York, on February 7, 2015, Mr. Tyrone Gray was on the sidewalk in the Wakefield neighborhood of the Bronx when officers approached and searched him for firearms. After failing to find firearms or other contraband, the officers arrests Mr. Gray under the false pretense that there was an open warrant on Mr. Gray. The officers repeatedly tased Mr. Gray until he was unable to get up. Mr Gray

settled his lawsuit for $20,000. Gray v. City Of New York et al., Dkt. No. 16-CV-00663,
paragraph 14, available at https://www.documentcloud.org/documents/4921999-Gray-v-City-Of-
New-York-et-al.

11.     According to a lawsuit filed in the Southern District of New York, on February
18, 2015, Mr. Kezian McDaniel was drinking a cup of coffee in front of his home in the
Alphabet City neighborhood of Manhattan, when two officers from the Warrants Section of the
NYPD approached Mr. McDaniel with Tasers in their hands. The officers did not ask for
identification and mistook Mr. McDaniel for someone named Jonathan Jones who was wanted
by the NYPD. The officers tased Mr. McDaniel, causing him to defecate in his pants, and then
arrested him. The officers fabricated a story that Mr. McDaniel had resisted arrest and had
possessed a gravity knife in order to cover up their own misconduct. Prosecutors eventually
moved for dismissal of the charges. Mr. McDaniel settled his lawsuit for $30,000. McDaniel v.
City Of New York, et al., Dkt. No. 15-CV-06868, paragraph 15, available at
https://www.documentcloud.org/documents/4921345-McDaniel-v-City-Of-New-York-et-al.

12.     According to a lawsuit filed in the Eastern District of New York, on May 1, 2015,
Mr. Marcus Bonner, an African American man, was outside on the sidewalk in the East New
York neighborhood of Brooklyn, when three NYPD officers approached and assaulted him. One
of the officers tased Mr. Bonner's back, and then deployed the Taser again in the touch stun
mode for a minimum of two more cycles. Mr. Bonner settled his lawsuit for $250,000. Bonner v.
City of New York et al., Dkt. No. 16-CV-00368, paragraphs 13-15, available at
https://www.documentcloud.org/documents/4921954-Bonner-v-City-of-New-York-et-al.

13.     According to a lawsuit filed in the Eastern District of New York, on June 8, 2015,
Mr. Mario Ocasio began acting strangely when his girlfriend called for an ambulance to transport

Mr. Ocasio to a hospital. More than ten uniformed NYPD officers responded, along with EMTs, and the officers attempted to arrest Mr. Ocasio by beating him and tasing him twice, leading to his death. The lawsuit was pending as of July, 30, 2019. Pagan v. The City of New York et al., Dkt. No. 15CV05825, paragraphs 79-82, available at

https://www.documentcloud.org/documents/4922150-Pagan-v-The-City-of-New-York-et-al.

14.     According to a lawsuit filed in the Southern District of New York, on July 1, 2015, Mr. Anthony Andre Paul was at his residence in the Bedford Park neighborhood of the Bronx, when officers responded to a report that Mr. Paul was in an emotionally disturbed state. The officers forced entry into Mr. Paul's room and tased him thirteen separate times, at times using two Tasers at once in violation of NYPD Patrol Guide Section 212-117. The officers failed to reassess Mr. Paul's condition after each electrical discharge, as is required by the Patrol Guide. The excessive Taser use was a cause of Mr. Paul's wrongful death. The lawsuit was pending as of July, 30, 2019. Paul et al. v. City Of New York et al., Dkt. No. 16-CV-01952, paragraphs 56-58, available at https://www.documentcloud.org/documents/4922287-Paul-et-al-v-City-Of-New-York-et-al.

15.     According to a lawsuit filed in the Eastern District of New York, on September 19, 2015, Mr. John Scoma was at his home with his wife in the Dyker Heights neighborhood of Brooklyn when NYPD officers entered his home suddenly and tased Mr. Scoma twice while arresting him. The lawsuit was pending as of July, 30, 2019. Scoma v. City of New York et al, Dkt. No. 16-CV-06693, paragraph 16, available at

https://www.documentcloud.org/documents/4923523-Scoma-v-City-of-New-York-et-al.

16.     According to a lawsuit filed in the Eastern District of New York, on or about October 12, 2015, Mr. Shatee Denmark was sitting outside in the Fort Greene neighborhood of

Case 1:19-cv-09412-AJN Document 14 Filed 10/10/19 Page 7 of 10

Brooklyn, when officers approached him and asked for his identification. Mr. Denmark did not have his identification on him, but he gave his name to the officers to check for outstanding warrants. Officers told Mr. Denmark that he had a warrant, which Mr. Denmark believed was a mistake, but he allowed himself to be arrested. The officers falsely claimed Mr. Denmark was resisting arrest and then shot Mr. Denmark with a Taser. The lawsuit was pending as of July, 30, 2019. Denmark v. City of New York et al., Dkt. No. 18-CV-01224, paragraph 18, available at https://www.documentcloud.org/documents/4928428-Denmark-v-City-of-New-York-et-al.

17.     According to a lawsuit filed in the Eastern District of New York, on November 28, 2015, Mr. Tony Holley was walking on the sidewalk in the Jamaica neighborhood of Queens when three NYPD officers approached him with their weapons drawn. The officers tased Mr. Holley in his chest despite training bulletins from the maker of Tasers instructing officers to avoid shooting suspects in the chest with a Taser. Mr. Holley settled his lawsuit for $70,000. Holley v. The City of New York et al., Dkt. No. 17-CV-00278, paragraphs 16-18, available at https://www.documentcloud.org/documents/4923611-Holley-v-The-City-of-New-York-et-al.

18.     According to a lawsuit filed in the Southern District of New York, on January 12, 2017, Mr. Shamir Batista was approached by two plainclothes officers who appeared menacing in nature and did not announce themselves as officers, and when Mr. Batista took a defensive stance, the officers tackled him, struck him, and tased him. The lawsuit was pending as of July, 30, 2019. Batista v. New York Police Department et al., Dkt. No. 17-CV-01994, Facts, available at https://www.documentcloud.org/documents/4925463-Batista-v-New-York-Police-Department-et-al.

19.     According to a lawsuit filed in the Eastern District of New York, on January 2, 2017, Mr. Igal Sagy was in the Crown Heights neighborhood of Brooklyn, when officers tased

and beat him in front of his children. The lawsuit was pending as of July, 30, 2019. Sagy v. City

of New York et al., Dkt. No. 18-CV-01975, Section II.D and Notice of Claim paragraph 3,

available at https://www.documentcloud.org/documents/5379242-Sagy-v-City-of-New-York-et-

al.

20.     According to a lawsuit filed in the Southern District of New York, on January 14,

2017, Jarzette Jacobs and her son, Jah'Lire Nicholson were inside their home in the Laurelton

neighborhood of Queens when a group of uniformed NYPD officers kicked open their door. Mr.

Nicholson had a screwdriver in his hand at the time the officers arrived, but officers did not

instruct him to drop the screwdriver. The officers fired Taser barbs in Mr. Nicholson's direction,

but Mr. Nicholson moved away from the officers and the Taser barbs, at which time one of the

officers shot and killed Mr. Nicholson with a firearm. Ms. Jacob's lawsuit was pending as of

July, 30, 2019. Jacobs et al v. City of New York et al., Dkt. No. 18-CV-03275, paragraph 24,

available at https://www.documentcloud.org/documents/4928511-Jacobs-et-al-v-City-of-New-

York-et-al.

21.     According to a lawsuit filed in the Eastern District of New York, on February 20,

2017, Mr. Orlando Marmolejo was buying a cup of coffee at a Dunkin Donuts in the Carroll

Gardens neighborhood of Brooklyn when several police vehicles arrived. The officers ordered

Mr. Marmolejo to leave. At first Mr. Marmolejo asserted his right to stay, but then he followed

the officers' instructions to leave the store. As Mr. Marmolejo walked away from the store, the

officers tased him, placed him in handcuffs, and took him to the hospital, but never charged him

with any offense. Mr. Marmolejo settled his lawsuit for $57,500. Marmolejo v. City of New

York et al., Dkt. No. 17-CV-07517, paragraph 19, available at

https://www.documentcloud.org/documents/6428559-Marmolejo-v-City-of-New-York.html.

22.     According to a lawsuit filed in the Eastern District of New York, on May 19,

2017, Mr. Ramon Abreu was in front of the Bushwick Houses in the Williamsburg neighborhood

of Brooklyn with several other people listening to music from a boom-box speaker. Police

arrived and asked Mr. Abreu to turn off the music, and he complied. The officers then demanded

that Mr. Abreu hand over the speaker, and when Mr. Abreu stated that he had turned off the

music, the officers grabbed him, attempted to tase him, and hit him in the head with the handle of

the Taser. Mr. Abreu settled his lawsuit for $15,000. Abreu v. City of New York et al., Dkt. No.

17-CV-07145, paragraphs 21-22, available at

https://www.documentcloud.org/documents/4928227-Abreu-v-City-of-New-York-et-al.

23.     According to a lawsuit filed in the Eastern District of New York, on July 31,

2017, Mr. Dwayne Randy Jeune was at his home in the East Flatbush neighborhood of Brooklyn

when officers responded to a 911 call characterizing Mr. Jeune as emotionally disturbed. The

responding officers were armed with Tasers and discharged them without reason or provocation,

striking Mr. Jeune. The complaint goes on to describe that officers beat Mr. Jeune and eventually

shot him five times with a firearm, resulting in his death. The lawsuit was pending as of July, 30,

2019. Jeune v. The City of New York et al., Dkt. No. 18-CV-01305, paragraphs 24, 27-29,

available at https://www.documentcloud.org/documents/5379229-Jeune-v-The-City-of-New-

York-et-al.

24.     According to a lawsuit filed in the Eastern District of New York, on September

16, 2017, Mr. Andre Lawson was at his home in the East New York neighborhood of Brooklyn

when he fell in the shower and suffered a laceration to his back. His girlfriend believed he

needed stitches and called 911, but by the time EMTs arrived, Mr. Lawson had decided he did

not want to go to the hospital. Officers arrived and ordered him to get into the ambulance, and

when he requested to get a shirt before leaving for the hospital, the officers refused, grabbed him, threw him to the ground, beat him, and tased him. Mr. Lawson settled his lawsuit for $15,000. Lawson v. City of New York et al., Dkt. No. 17-CV-07501, paragraph 27, available at https://www.documentcloud.org/documents/4928247-Lawson-v-City-of-New-York-et-al.

25.    According to a 2016 news report by the New York *Times*, NYPD officers shoot Tasers "usually to subdue unarmed people or those already in custody, not to stop someone who has put the life of an officer or someone else in peril." The report cited an example of an incident in 2014 when an NYPD officer fired a Taser at a mute autistic man after he flailed his arms and was uncooperative. *See* Joseph Goldstein, *New York Police Embracing a Weapon They Have a Complicated Past With: Tasers*, N.Y. Times (Jul. 27, 2016), https://www.nytimes.com/2016/07/28/nyregion/new-york-police-embracing-a-weapon-they-have-a-complicated-past-with-Tasers.html.

26.    According to a 2017 news report by The Root, a video surfaced showing two NYPD officers dispersing high school students who were standing on a sidewalk near their school. The video shows that the officers followed the students, pushed them, taunted them, and then one of them unholstered his Taser and threatened the students, saying "You wanna ride the lightning?" *See* Breanna Edwards, *'You Wanna Ride the Lightning?' NYC Cops Heard in Video Threatening Students With Taser*, The Root (Apr. 4, 2017), https://www.theroot.com/you-wanna-ride-the-lightning-nypd-cops-heard-on-camera-1793985698.